IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ANGELA DAWN HARDIE, | ) CASE NO. 5:23CV1848 |
| Plaintiff, | ) |
| vs. | ) JUDGE BENITA Y. PEARSON |
| | ) |
| | ) MAGISTRATE JUDGE |
| | ) JONATHAN D. GREENBERG |
| COMMISSIONER | ) |
| OF SOCIAL SECURITY, | ) |
| Defendant. | ) **REPORT & RECOMMENDATION** |
| | ) |

Plaintiff, Angela Dawn Hardie, ("Plaintiff" or "Hardie"), challenges the final decision of Defendant, Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 et seq. ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be **AFFIRMED.**

### I. PROCEDURAL HISTORY

On February 5, 2019, Hardie filed an application for SSI, alleging a disability onset date of January 25, 2018. Transcript ("Tr.") at 319-20. She claimed disability due to cardiac/CAD, Buerger's disease, partial foot amputation, conversion disorder, anxiety, depression, learning disability, and hernia. (Tr. 346) Her application was denied initially and upon reconsideration, and Hardie requested a hearing before an administrative law judge ("ALJ"). (Tr. 124-51, 170-71)

1

On April 7, 2022, ALJ Paula Goodrich held a hearing on Hardie's application. (Tr. 67-97) Hardie, represented by counsel, and a vocational expert testified. (*Id.*) On June 1, 2022, the ALJ issued a written decision finding Hardie was not disabled. (Tr. 44-58) The ALJ's decision became final on July 26, 2023, when the Appeals Council declined further review. (Tr. 1-3)

Hardie then filed the instant Complaint challenging the Commissioner's final decision. (Doc. No. 1) The parties have completed briefing in this case. (Doc. Nos. 6, 7) Hardie presents three assignments of error for the Court's review:

> 1. The ALJ committed harmful error when she applied the wrong standard of review when she erroneously adopted some of the findings of the prior ALJ.
>
> 2. The ALJ erred when she failed to properly assess Plaintiff's obesity.
>
> 3. The ALJ committed harmful error when she failed to properly apply the criteria of SSR 16-3p and failed to find that Plaintiff's symptoms, including pain, precluded her from engaging in substantial gainful activity on a full-time and sustained basis.
>
> 4. The ALJ erred when she relied on the testimony of the vocational witness who identified jobs which did not exist in significant numbers in the national economy.

(Doc. No. 6 at 1)

## II. EVIDENCE

### A. Personal and Vocational Evidence

Hardie was born in 1978 and was 40 years old on the date the application was filed making her a "younger individual age 18-44," under social security regulations. (Tr. 57) *See* 20 C.F.R. § 416.963. She has a limited education. (*Id.*)

### B. Relevant Medical Evidence[1]

Hardie has a past medical history involving myocardial infarction, heart disease, hypertension, aortobifemroal bypass grafting for an aortoiliac occlusion, and Buerger's disease with amputation of two toes on the left foot (see e.g., Tr. 863, 865).

---

[1] The Court's recitation of the evidence is not exhaustive and is limited to the evidence cited in the parties' briefs.

2

Hardie reported waxing and waning chest pressure on March 18, 2018, resulting in diagnoses of nonspecific chest pain and dizziness. (Tr. 554, 559) Hardie was hospitalized from November 2 to November 4, 2018, after difficulty speaking and stuttering. (Tr. 615) She was diagnosed with conversion disorder. (*Id.*) On November 28, 2018, Dr. Mark Snavely, Aultman Behavioral Health treated Hardie for depression, anxiety, convergent disorder with neurologic symptoms, alcohol dependence, and benzodiazepine dependence. (Tr. 827) A mental status exam found a restricted and anxious affect, as well as poor insight. (*Id.*)

On June, 2018, Aultman Medical Group Cardiovascular Consultants remarked that Hardie's cardionet monitor revealed an isolated episode of paroxysmal supraventricular tachycardia along with two symptomatic episodes with shortness of breath and lightheadedness. (Tr. 744) Dr. David Cola evaluated Hardie on November 21, 2018, for her peripheral vascular disease. (Tr. 773-774) She was advised to quit smoking and lose weight. (Tr. 774)

In January 2019, the month she filed her application for SSI, Hardie was evaluated by Matthew Miller, M.D. (Tr. 862-71, 1210) It was noted that her medication regimen included a proton-pump inhibitor, pantoprazole; a beta blocker, carvedilol (Coreg); atorvastatin (Lipitor); lisinopril; aspirin; ibuprofen; and nitroglycerin (Tr. 862-63). She was smoking 1/4 of a package of cigarettes per day and consuming alcohol five days per week (Tr. 863 -64). She reported palpitations, heart racing and skipping a beat, chest pain or discomfort, and heat and cold intolerance (Tr. 864). A physical examination was unremarkable except for noting Hardie's obesity and the absence of two toes on her left foot (Tr. 865). It was recommended she stop smoking, continue daily aspirin therapy, walk as much as possible, and return to care in six months for repeat laboratory testing (*Id.*)

In March 2019, Hardie was evaluated by her primary care provider, David Cola, D.O., for a recheck of her hypertension. (Tr. 1126-27) At that time, she reported that her symptoms did not

include chest pain, difficulty breathing, palpitations, or edema. (Tr. 1126) Her mood and affect were described as "not anxious, not depressed." (Tr. 1127) A physical examination was unremarkable. (Tr. 1127). She was counseled on weight loss and smoking cessation. (*Id.*) Hardie returned to Dr. Cola in June 2019, and denied shortness of breath, chest pain, and edema. (Tr. 1241) A physical examination was unremarkable and she was continued on her existing treatment regimen and advised on smoking cessation. (Tr. 1242-43) In September 2019, Hardie followed up with Dr. Miller. (Tr. 1186-89) He noted, "She is doing well with no complaints . . . She underwent ultrasound today which shows a widely patent triphasic graft. She is no longer smoking. She is on daily aspirin therapy." (Tr. 1189) Hardie was continued on aspirin and advised to follow up in one year (*Id.*)

Hardie tripped and fell on September 12, 2019 injuring her left ankle (Tr. 1169). On examination, there was edema. (Tr. 1170). She was assessed with sprain of left ankle, closed fracture of lateral malleolus, and chronic ankle instability *(Id*.). She was examined one and two weeks later, at which times she reported experiencing only mild pain that was alleviated with her medication (Tr. 1174, 1178).

She was examined by Regional Vascular & Vein Institute on September 24, 2019, for her follow up aorta bifemoral graft. (Tr. 1186-1190). Hardie had an active problem of atherosclerosis of native arteries of extremities with intermittent claudication in both legs. (Tr. 1188) Hardie had ventral hernia surgery on November 9, 2021. (Tr. 1487-1489) Then, on May 21, 2020, she had complaints regarding dizziness and skipped heartbeats. (Tr. 1324)

In February 2021, Hardie reported doing well overall with no chest pain, shortness of breath, or edema. (Tr. 1480) A physical exam was normal. (Tr. 1480-81) A cardiac stress test showed no evidence of ischemia, scarring, or wall motion abnormality. (Tr. 1511-12) When evaluated by Dr. Cola for anxiety in July 2021, Hardie denied cardiac symptoms, including chest pain, difficulty breathing on exertion, edema, and palpitations. (Tr. 1444). In October 2021, she underwent a

4

presurgical evaluation related to a planned hernia repair. (Tr. 1401-04) Hardie reported on and off chest pain for several years whenever she "overexerts herself," such as when pushing a wheelbarrow or carrying a bucket while performing yard work. (Tr. 1402). She admitted to continuing to smoke at least 1/2 package of cigarettes per day with no interest in quitting. (*Id.*) The presurgical clearance examination was normal (*Id.*) When evaluated by Dr. Cola in October 2021, Hardie denied dizziness and chest pain, but endorsed heart murmur and palpitations (Tr. 1437-38). A physical examination was normal. (Tr. 1438) Ankle and abdominal venous studies were also normal with no evidence of arterial insufficiency or stenosis. (Tr. 1537, 1566) She was again advised on weight loss and smoking cessation. (Tr. 1439)

Hardie also sustained a left ankle sprain after tripping in September 2021. (Tr. 1410-17) She presented with abnormal medical signs, including mild to moderate swelling and edema, through November 2021. (*Id.*)

**C.     Opinion Evidence**

**Dr. Paulowski.** On February 28, 2021, John Paulowski, M.D., F.A.C.C. wrote a letter stating that he felt Hardie is "completed disabled from a cardiac standpoint" and that her condition markedly limited her physical activity. (Tr. 1374)

**Dr. O'Neill.** Podiatrist Adrienne O'Neill opined that Hardie had no limitations in an assessment from 2019. (Tr. 469) In March 2020, Dr. O'Neill completed a medical statement and opined that Hardie could occasionally lift 50 pounds; could sit for 90 minutes at a time; and stand for 30 minutes at a time; she must walk around every 15 minutes for 10 minutes each time. (Tr. 1296-97) Dr. O'Neill stated that his opinions were based on Hardie's partial toe amputations and diabetic neuropathy in her feet. (Tr. 1297) He opined that Hardie could occasionally stoop, crouch, climb stairs and ladders, and frequently twist. (*Id.*) He determined Hardie had no limitations in her ability to reach, handle, finger, feel, and push/pull. (*Id.*) He also opined that Hardie should avoid

5

concentrated exposure to extreme cold or heat and high humidity. (Tr. 1298) Last, he stated that Hardie would likely be absent from work twice a month due to her impairments. (*Id.*)

**State Agency Opinions:** In April 2019, state agency medical consultant, Steve McKee, M.D., reviewed the casefile and found that Hardie had the same RFC as was found in a prior ALJ decision because the available evidence did not show a new and material change in her functional abilities: she could perform work at the sedentary exertional level, but could frequently push and pull/operate foot controls with the left lower extremity; could frequently climb ramps and stairs, and never climb ladders, ropes, or scaffolds; could frequently kneel and crouch, and occasionally crawl; should have avoided concentrated exposure to extreme cold; and should have avoided exposure to workplace hazards, such as moving, mechanical parts and unprotected heights (Tr. 133-34, see also Tr. 105, January 2018 ALJ Decision RFC Finding). William Bolz, M.D., affirmed Dr. McKee's findings at the reconsideration level and found that Hardie had not alleged any worsening in her conditions since filing her SSI application. (Tr. 146-47)

**C.** **Hearing Testimony**

On April 7, 2022, Hardie, represented by counsel, appeared for a telephonic hearing before ALJ Paula Goodrich. Hardie testified to the following:

- She lives in a home with a roommate. She has never had a license. She owns a car but her roommate drives for her. She completed schooling through the 10th grade. She was in special education for reading and writing.

- She has panic attacks when out in public around a lot of people, as well as at home. She averages 3-4 panic attacks a month. They last 2-30 minutes at a time. She is unable to sit or stand for longer than 20 minutes and must get up and walk to keep her legs from swelling and cramping up. She can walk for 30-45 minutes at a time but cannot take the stairs. When she sits, she elevates her legs and this happens 3-4 times a day for 20-30 minutes at a time. She has neuropathy in her left foot as the result of a prior toe amputation. She broke her left ankle several times. It often swells up and she has to wear a soft plastic cast many times in a month. She can lift 5 pounds. She is being monitored for heart palpitations. Her heart issues cause lightheadedness, shortness of breath, and chest pain. She has a loop recorder in her chest to monitor her heart.

6

- She smokes cigarettes but went from 2 packs a day to 1/2 of a pack a day. She drinks daily but the amount varies. She has a history of drug use but has not recently used. On a typical day she cooks, does laundry, grocery shops, and gardens. However, she needs help carrying heavy items. She also reads James Patterson and Stephen King books but it takes her a month to read a book because she has comprehension difficulties. She is only social with family.

(Tr. 75-90)

A Vocational Expert, Millie Droste ("VE"), also testified at the hearing (Tr. 90-94). The ALJ posed hypothetical scenarios to the VE about what types of jobs an individual of Hardie's age and education could perform with the following theoretical limitations:

> Occasionally lift and/or carry, including outward pulling 10 pounds, could frequently lift and/or carry, including outward pulling less than 10 pounds. The individual could stand and/or walk with normal breaks for a total of two hours in an eight-hour workday. The individual could occasionally push or pull or operate foot controls with the left lower extremity. The individual could occasionally climb ramps and stairs, occasionally balance, stoop, kneel, crouch, crawl, never climb ladders, ropes, and scaffolds. The individual should avoid concentrated exposure to extreme cold, and should avoid hazardous machinery, unprotected heights, and commercial driving.

The VE testified that the hypothetical person would be able to perform sedentary work as a document preparer, a parimutuel-ticket checker, and call-out operator. (Tr. 90-91) The VE also testified that an employer would not tolerate more than 10% off-task time on a regular basis. The VE further testified that a need for leg elevation during breaks would not affect any of the jobs listed in response to the hypothetical. However, if an individual had to get up and walk around for 15 minutes every hour, that would be work preclusive for a sedentary job. (Tr. 90-94)

### III.  STANDARD FOR DISABILITY

A disabled claimant may also be entitled to receive SSI benefits.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs*., 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4).  *See also Ealy v. Comm'r of*

*Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment or combination of impairments does not prevent her from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since January 15, 2019, the application date (20 CFR 416.971 et seq.).

2. The claimant has the following severe impairments: Buerger's disease, peripheral arterial disease status post partial amputation of the first and second toes of the left lower extremity, neuropathy, Raynaud's disorder, obesity, coronary artery disease status post myocardial infarction and standing with implantation of insertable loop recorder, cardiomyopathy, status post aortobifemoral bypass graft surgery, atherosclerosis of the native arteries of the extremities with intermittent claudication, and hypertension (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she can lift and/or carry (including upward pulling) ten pounds occasionally and less than ten pounds frequently. She can stand and/or walk (with normal breaks) for a total of about two hours in an eight-hour workday. The claimant can occasionally push, pull, and operate foot controls with the left lower extremity. She can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. She should avoid concentrated exposure to extreme cold. She must avoid hazardous machinery, unprotected heights, and commercial driving.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born in October 1978 and was 40 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since January 15, 2019, the date the application was filed (20 CFR 416.920(g)).

(Tr. 50-58)

### V. STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as

"'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v.Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also His v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow

its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996); accord *Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D.Ohio July 9, 2010).

## VI. ANALYSIS

Hardie presents four arguments for review. First, Hardie argues that the ALJ applied the wrong standard of review when she adopted findings of the prior ALJ. Second, Hardie contends that the ALJ erred in assessing her obesity. Third, Hardie argues that the ALJ failed to apply Social Security Ruling 16-3p when assessing the intensity, persistence and limiting effects of Hardie's symptoms. Fourth, Hardie argues that the ALJ erred by relying on inaccurate VE testimony.

### A. Prior Administrative Findings Adoption

Hardie argues that the ALJ erred in applying *res judicata* and adopting the rulings of a prior ALJ. (Doc. No. 6 at 8-12) Hardie asserts that new and material evidence since her last ALJ hearing dictates a different finding. *Id.* The Commissioner counters that the ALJ applied the appropriate standard and determined Hardie was more limited than the prior ALJ. (Doc. No. 7 at 13-15).

Hardie filed an earlier application for SSI on May 28, 2015. That application was denied by a prior ALJ on January 24, 2018. (Tr. 101-10) In the 2018 decision, the ALJ determined that Hardie had the residual functional capacity ("RFC") to perform sedentary work except she could frequently

11

climb ramps and stairs; never climb ladders, ropes, or scaffolds; could frequently kneel and crouch; occasionally crawl; should avoid concentrated exposure to extreme cold and workplace hazards such as moving mechanical parts and unprotected heights. (Tr. 105) In *Drummond v. Commissioner*, the Sixth Circuit determined that an RFC determination on an earlier disability claim is binding unless there is new and material evidence or a change in the circumstance that provides a basis for a different finding. *Id.*, 126 F.3d 837 (6th Cir. 1997). In the current matter, ALJ Goodrich determined that there is new and material evidence "pertaining to the unadjudicated period that changes the prior residual functional capacity" and she was "not bound to adopt the [RFC] used in the prior opinion." (Tr. 47-48) Thus, the ALJ did not apply *res judicata*.

Nonetheless, Hardie suggests that ALJ Goodrich erred when she relied on the opinions of the state agency reviewing consultants, who relied on the prior ALJ findings. Here the state agency reviewing sources adopted the prior ALJ's RFC findings under AR 98-4 (*Drummond*). (Tr. 132, 134, 144, 148) However, the fact that the ALJ found these "opinions persuasive in part" does not mean the ALJ applied *res judicata*. In *Hoffacker v. Comm'r of Soc. Sec.*, this Court addressed a similar issue. This Court stated that an argument that the state agency consultants erred by adopting the prior RFC based on AR 98-4, and that the error could be imputed to the ALJ, would fail as long as the ALJ considered "the totality of the evidence in making her RFC determination." *Hoffacker v. Comm'r of Soc. Sec.,* No. 1:23-CV-01010, 2024 WL 692690, at *1, 4, 10 (N.D. Ohio Feb. 20, 2024). Here, the ALJ considered the totality of the evidence. She adopted the state agency physicians' opinions in part and explained that she did so "because the record confirmed that the claimant remained capable of light work generally. However, updated evidence showed that her conditions necessitated further postural limitations." (Tr. 56) With regard to mental limitations, the ALJ found the state psychological consultant opinions that Hardie had mild limitations in the paragraph B criteria persuasive "in part" because "While the record contains updated evidence since

12

the consultants' review, the claimant had only minimal and intermittent mental symptoms, consistent with the finding of no more than mild mental limitations." (*Id.*) Further, as noted by the Commissioner, the ALJ adopted a more limited RFC than the prior determination. Accordingly, the ALJ's RFC determination was based on the totality of the evidence. The ALJ did not apply the wrong standard and did not err in her partial adoption of the state agency consultants' opinions.

### B. Obesity

In her second argument, Hardie contends that the ALJ failed to properly assess her obesity pursuant to Social Security Ruling 19-2p. (Doc. No. 6 at 13-14) SSR 19-2p articulates how the Administration evaluates obesity and requires an ALJ to "consider the limiting effects of obesity when assessing a person's RFC." SSR 19-2p, 2019 WL 2374244, at *1, 4 (May 20, 2019). SSR 19-2p also states that "the combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately" and requires ALJs to "explain how [they] reached [their] conclusion on whether obesity causes any limitations." *Id.*

This Court has found that a claimant's "bare assertion that the ALJ's analysis of her obesity was inadequate" does not warrant reversal where a claimant fails to show "specifically how [her] obesity, in combination with other impairments, limited [her] ability to a degree inconsistent with the ALJ's RFC." *Miley v. Comm'r of Soc. Sec.*, No. 1:20-CV-2550, 2021 WL 6064754, at *10 (N.D. Ohio Dec. 22, 2021); *See also Rives v. Comm'r of Soc. Sec.,* No. 1:20-CV-02549, 2022 WL 1076216, at *32 (N.D. Ohio Feb. 4, 2022), report and recommendation adopted, No. 1:20CV2549, 2022 WL 681273 (N.D. Ohio Mar. 8, 2022)("Ms. Rives has failed to demonstrate how the combination of her obesity with other impairments was inconsistent with the ALJ's findings at Step Three or Step Four."); *Landess v. Kijakazi*, No. 4:21-CV-38-DCP, 2022 WL 4474894, at *10 (E.D. Tenn. Sept. 26, 2022)("Even if the ALJ should have discussed Plaintiff's obesity in her decision, the Court finds remand is unwarranted because Plaintiff has failed to provide evidence that obesity

13

affected her ability to work."); *Lumpkin v. Comm'r of Soc. Sec.*, No. 1:20-CV-01849, 2021 WL 5828692, at *7, 2021 U.S. Dist. LEXIS 208622, at *21 (N.D. Ohio Oct. 6, 2021) (same). Here, Hardie argues that the ALJ's obesity discussion was insufficient. However, Hardie fails to demonstrate how her obesity, in combination with her other impairments, was inconsistent with the ALJ's RFC finding (e.g., sedentary work with additional limitations). Accordingly, Hardie has not shown the ALJ erred. Moreover, the decision demonstrates that the ALJ considered Hardie's obesity. (See Tr. 54, 55) In addition, this Court has found that an ALJ's SSR 19-2p analysis is sufficient where, as here, an ALJ considers medical opinions that incorporate an assessment of claimant's obesity. *Rives v. Comm'r of Soc. Sec.*, No. 1:20-CV-02549, 2022 WL 1076216, at *32 (N.D. Ohio Feb. 4, 2022), report and recommendation adopted, No. 1:20CV2549, 2022 WL 681273 (N.D. Ohio Mar. 8, 2022). For all the above-mentioned reasons, Hardie fails to show the ALJ committed reversable error in assessing Hardie's obesity.

### C. Pain Assessment

In her third assignment of error, Hardie argues that the ALJ committed harmful error when she failed to properly apply the criteria of Social Security Ruling 16-3p and failed to find that the intensity, persistence and limiting effects of Hardie's symptoms, including obesity and pain, preclude her from engaging in substantial gainful activity on a full-time and sustained basis. (Doc. No. 6 at 14-19) Although an ALJ may consider subjective complaints as evidence in support of a disability, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 475–76 (6th Cir.2003). ALJs consider the following factors when determining the credibility of a claimant's statements about his or her symptoms:

> (i) [A claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [a claimant's] pain or other symptoms;
> (iii) Precipitating and aggravating factors;

14

> (iv) The type, dosage, effectiveness, and side effects of any medication [a claimant] take[s] or [has] taken to alleviate [his or her] pain or other symptoms;
> (v) Treatment, other than medication, [a claimant] receive[s] or [has] received for relief of [a claimant's] pain or other symptoms;
> (vi) Any measures [a claimant] use[s] or [has] used to relieve [his or her] pain or other symptoms (e.g., lying flat on [one's] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning [a claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). "We accord an ALJ's credibility determinations great weight and deference." *Schmiedebusch v. Comm'r of Soc. Sec. Admin.,* 536 F. App'x 637, 649 (6th Cir. 2013). The Court is "limited to evaluating whether ... the ALJ's explanations for partially discrediting [a claimant's testimony] are reasonable and supported by substantial evidence in the record." *Id.* (quoting *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 476 (6th Cir. 2003).

Here, the ALJ found claimants alleged symptoms and limitations only "partially consistent with the evidence." (Tr 56) The ALJ explained:

> The claimant had periodic complaints of chest pain, palpitations, dizziness, and foot pain. However, with treatment, her conditions were largely controlled. Her cardiac condition stabilized to a large degree and she had only intermittent foot complaints. Indeed, she had generally normal lower extremity function and gait. Such facts suggest that she could perform the reduced range of sedentary work described in the residual functional capacity. In terms of her mental conditions, the claimant had only periodic complaints of anxiety that appeared to be controlled. She did not display any ongoing objective mental symptoms.

(*Id.*) Hardie argues that the ALJ failed to "articulate any supportable rationale" for finding Hardie's statements were inconsistent with the evidence. (Doc. No. 6 at 18).

Hardie has not addressed the ALJ's above explanation or references to the evidence in the record. Instead, Hardie recites evidence she believes supports her complaints. However, the Court must defer to an ALJ's findings if they are supported by substantial evidence, even if substantial evidence also supports the opposite conclusion. *Lindsley v. Comm'r of Soc. Sec.,* 560 F.3d 601, 604-05 (6th Cir. 2009); *see also O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. Aug 7, 2020) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003)) ("[T]he

15

Commissioner's decision still cannot be overturned "so long as substantial evidence also supports the conclusion reached by the ALJ.").

Here, the ALJ provided specific reasons, supported by substantial evidence in the record and using the factors outlined in SSR 16-3p, for not fully crediting Hardie's allegations. The ALJ stated that Hardie's cardiac condition stabilized to a large degree. In support, the decision cites several treatment notes in 2021 and 2022, where Hardie reported no chest pain, shortness of breath, or lightheadedness. (Tr. 54-55 citing Tr. 1589) The ALJ also highlights objective evidence in conflict with Hardie's complaints including a May 2020 EKG with no abnormal findings and a November 2021 stress test that found "no evidence of ischemia or scarring. No wall motion abnormality." (Tr. 55 citing 1467, 1450-51, 1583) The ALJ further found that, aside from some noted falls where Hardie injured her ankle, her foot complaints were intermittent and the ALJ cited treatment notes showing no foot complaints. (e.g., Tr. 54-55 citing 1581, 1590) The ALJ also determined Hardie's alleged symptoms related to her mental limitations were not fully supported because Hardie displayed no ongoing objective mental symptoms. In her brief, Hardie only cites to her subjective mental health complaints which fail to negate the ALJ's finding about objective evidence.

Since the ALJ's credibility determination is sufficiently articulated and supported by substantial evidence, it will be given great weight. *Workman v. Comm'r of Soc. Sec.*, 105 Fed.Appx. 794, 801 (6th Cir. 2004) ("An ALJ's credibility assessment must be accorded great weight and deference."); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir.2003) (explain that in reviewing an ALJ's credibility determination, the Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [Plaintiff's testimony] are reasonable and supported by substantial evidence in the record." The Court must defer to an ALJ's findings if they are supported by substantial evidence, even if substantial evidence also supports the opposite conclusion. *Lindsley*

*v. Comm'r of Soc. Sec.,* 560 F.3d 601, 604-05 (6th Cir. 2009); *see also O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. Aug 7, 2020) (*quoting Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003)) ("the Commissioner's decision still cannot be overturned "so long as substantial evidence also supports the conclusion reached by the ALJ."). As the Sixth Circuit has explained, "an administrative law judge's credibility findings are virtually unchallengeable absent compelling reasons." *Shepard*, 705 Fed. Appx. at 442. Hardie presents no such compelling reasons.

### D. VE Testimony

In her final assignment of error, Hardie argues that the ALJ erred by relying on VE testimony. (Doc. No. 6 at 19-20) The VE opined that a person with Hardie's RFC could perform jobs as a document preparer (1900 jobs nationally), parimutuel-ticket checker (1900 jobs nationally), and call-out operator (3000 jobs nationally) (Tr. 91-92) Hardie contends that 6,800 jobs does not represent "significant numbers" under agency regulations.

In order to support a finding that an individual is not disabled at the last step of the sequential evaluation, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's RFC, age, education, and work experience (20 CFR 416.912 and 416.960(c)). The Sixth Circuit has explained:

> That an ALJ must tailor the determination of what is significant to the facts of each claimant's case is why we have said that ALJs "should consider many criteria in determining whether work exists in significant numbers." *Hall v. Bowen,* 837 F.2d at 275. It is why we have said "we cannot set forth one special number which is to be the boundary between a 'significant number' and an insignificant number." *Id.* And it is why substantial evidence review applies. *See id.; see also* 42 U.S.C. § 405(g).

*Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 906 (6th Cir. 2016). In *Taskila*, the Sixth Circuit held that 200 local jobs and 6,000 national jobs were "significant." In another case, the Sixth Circuit held 2,000 jobs was significant. *Nejat v. Comm'r of Soc. Sec.*, 359 Fed. App'x 574, 579

(6th Cir. 2009) (finding 2,000 jobs significant). Though Hardie cites some caselaw in support of her argument, this Court has rejected arguments identical to those Hardie presents:

> Claimant's references to various cases outside this district are only marginally relevant to the instant case since this is a fact-specific inquiry that depends upon the unique circumstances of the case. *See Hall*, 837 F.2d at 275. Thus, this Court is not bound by other courts' specific findings related to their unique factual circumstances—especially courts outside this district and circuit. Further, Claimant's reliance on *Tapp* does not establish his argument. (ECF No. 10, PageID #: 699–700). In *Tapp*, the court held that a few hundred regional jobs, 2,000 state jobs, and 30,000 national jobs constituted an insignificant number but failed to explain why. *See* 1991 WL 426310, at *1.[5] The opinion is two pages, and as discussed above, because of the unique facts of every case, the circumstances of the case will dictate varying "significant" numbers. *See Hall*, 837 F.2d at 275.[6] As substantial evidence supports this ALJ's finding that 14,000 jobs was a significant number and the finding does not conflict with Sixth Circuit precedent, this Court sees no reason to disturb the ALJ's ultimate disability finding.

*Kutyba v. Comm'r of Soc. Sec. Admin*, No. 5:22-CV-00483-CEH, 2023 WL 1438853, at *10 (N.D. Ohio Jan. 31, 2023). In addition to this Court's prior findings, as the Commissioner points out, the *Tapp* case cited by Hardie and the claimant in *Kutyba* predates the Sixth Circuit's opinions in *Taskila* and *Nejat*. As substantial evidence supports the ALJ's finding that 6,800 jobs was a significant number and the finding does not conflict with Sixth Circuit precedent, the ALJ's finding should not be disturbed.

## VII. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be **AFFIRMED**.

Date:  April 18, 2024               *s/ Jonathan Greenberg*
                                    Jonathan D. Greenberg
                                    United States Magistrate Judge

### OBJECTIONS
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**